UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| JOEL PASTERNAK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:19-CV-00178-JRG-CRW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Joel Pasternak's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Doc. 1], the United States' Response [Doc. 5], and Mr. Pasternak's Reply [Doc. 8]. The Court has determined that the files and records in the case conclusively establish that Mr. Pasternak is not entitled to relief under § 2255 and, therefore, no evidentiary hearing is necessary. For the reasons which follow, Mr. Pasternak's § 2255 motion will be **DENIED** and the § 2255 case **DISMISSED WITH PREJUDICE**.

I.   BACKGROUND

From January 2012 through September 2015, Mr. Pasternak led and organized an illegal anabolic steroid organization that imported raw steroid products from China, processed and sold them over the internet, and laundered the proceeds via "money receivers" located throughout the United States and abroad [PSR, Doc. 349, ¶¶ 6–20, No. 2:16-CR-00115]. During the conspiracy Mr. Pasternak distributed seventy-one kilograms of controlled substances, laundered 2.8 million dollars and recruited over twenty co-conspirators, including his own parents [*Id.* ¶¶ 15, 17, 31].

In July of 2015, law enforcement officers executed a federal search warrant at a residence where Mr. Pasternak stored financial records, computer equipment, and proceeds from his illegal

steroid business [PSR ¶¶ 25, 27–28]. During the search, Mr. Pasternak admitted that he threw two computers into the creek behind the residence [Sentencing Hr'g Tr., at 18]. He also showed officers where he had hidden a thumb drive and a cell phone [*Id.* at 18, 21, 24]. When officers questioned Mr. Pasternak about his parents' role in the conspiracy, he said that they had only recently become involved and had played a minimal role, a statement that officers knew from their prior investigation to be materially false [*Id.* at 22–23]. After the search, officers recovered extensive customer and financial data from the thumb drive, as well as evidence from the cell phone. [*Id.* at 18, 21–22]. However, the computers recovered from the creek were too damaged to retrieve any data [*Id.* at 21–22]. A third computer, which officers found in a fire pit, had been burned at some unknown time before the search and was also too damaged to recover any evidence [*Id.*].

Mr. Pasternak pleaded guilty to conspiracy to manufacture, distribute and possess with intent to distribute anabolic steroids in violation of 21 U.S.C. §§ 846, 841(b)(1)(E); possession of equipment, chemicals, products and materials used to manufacture anabolic steroids in violation of 21 U.S.C. § 843(a)(6); five counts of maintenance of drug premises in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2; and conspiracy to launder money in violation of 18 U.S.C. § 1956(h). [J., Doc. 445, No. 2:16-CR-115].

The probation office prepared a presentence report [PSR]. For the purposes of offense level calculation, the PSR grouped the drug-related counts (i.e. all counts except the money laundering) under USSG § 3D1.2(d) [*Id.* ¶ 37]. All counts were grouped under USSG § 3D1.2(c) [*Id.*]. To determine the highest offense level within the group, the PSR calculated the offense level for the drug conspiracy count and the money laundering count [*Id.* ¶¶ 37–52].

The drug conspiracy had a base offense level of 20, based on the drug weight involved [*Id.* ¶ 38]. *See* USSG § 2D1. In addition, the PSR recommended a four-level increase for specific offense characteristics (two levels for mass-marketing through the internet and two levels for maintaining drug premises), resulting in an offense level of 24 [*Id.* ¶¶ 18–19, 39–40]. After a six-level adjustment (four levels for Mr. Pasternak's leadership role and two levels for obstruction of justice), the adjusted offense level was 30 [*Id.* ¶¶ 24–25, 42–44].

The money laundering conspiracy had a base offense level of 24, pursuant to U.S.S.G. § 2S1.1(a)(1) [*Id.* ¶ 45].[1] The PSR added an additional four levels for specific offense characteristics (two levels because Mr. Pasternak was convicted under 18 U.S.C. § 1956 and two levels because of the sophistication of the offense), yielding an offense level of 28 [*Id.* ¶¶ 22–23, 46–47]. After a six-level adjustment (four levels for role in the offense and two levels for obstruction of justice), the adjusted offense level was 34 [*Id.* ¶¶ 24–25, 49–52].

Because 34 was the higher of the two adjusted offense levels, that number was used in the final Guidelines calculation [*Id.* ¶¶ 37, 52]. The PSR then applied a three-level reduction for acceptance of responsibility, yielding a total offense level of 31 [*Id.* ¶¶ 54–56]. With a criminal history category of I, Mr. Pasternak's resulting guidelines range was 108 to 120 months' imprisonment [*Id.* ¶ 81].

Mr. Pasternak's attorney lodged an objection to the two-point obstruction enhancement [Sentencing Hr'g Tr., Doc. 460, at 26, No. 2:16-CR-00115]. At the sentencing hearing, the United States presented evidence of Mr. Pasternak's obstructive conduct during the execution of the search warrant, including testimony from Special Agent Jimmy Cline [*Id.* at 16–24]. After hearing argument from the parties, the Court found that the computer in the fire pit, which had

---

[1] As discussed in more detail below, the "base offense level" for money laundering is the "offense level" of the underlying crime (i.e. the base offense level and any specific offense characteristics, cross references, and special instructions). U.S.S.G. §§ 2S1.1(a)(1), 1B1.5(b)(1).

been burned at an unknown time, was not evidence of obstruction [*Id.* at 27]. However, the Court found sufficient circumstantial evidence to show that when Mr. Pasternak saw agents approaching the residence, he attempted to destroy material evidence by throwing the two computers in the creek [*Id.*; *see also* Br. in Supp. of Pet'r's Mot. at 21–22]. In making this finding, the Court noted that given the kind of evidence contained on the thumb drive, it seemed likely these computers contained similar information [Sentencing Hr'g Tr., at 27–28]. Moreover, the Court found that Mr. Pasternak's false statement to officers, minimizing his parents' involvement, qualified as a second, independent basis for the enhancement [*Id.* at 28–29]. Accordingly, the Court overruled the objection to the obstruction enhancement and adopted the findings in the PSR [*Id.* at 29].

The Court sentenced Mr. Pasternak to the bottom of the Guidelines range, 108 months' imprisonment [J. at 3]. Mr. Pasternak appealed his sentence on the ground that it was substantively unreasonable, and the Court of Appeals for the Sixth Circuit affirmed the Judgment. *United States v. Pasternak*, 743 F. App'x 612 (6th Cir. 2018).

Now, Mr. Pasternak moves the Court to vacate, set aside, or correct his sentence under § 2255 on the ground that his trial attorney rendered ineffective assistance of counsel. The United States opposes his motion. Having carefully reviewed and considered Mr. Pasternak's claims and the parties' arguments, the Court is now prepared to rule on them.

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed

4

was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing he is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). Similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," he will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

5

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

### III. ANALYSIS

In seeking relief under § 2255, Mr. Pasternak raises two claims of ineffective assistance of counsel. First, he alleges that his attorney failed to object to the PSR's calculation of his offense level [Pet'r's Mot. at 4–5]. Second, he argues that his attorney failed to adequately investigate the obstruction of justice enhancement [*Id.* at 5]. In response, the United States argues that the PSR correctly calculated the offense level, and the obstruction of justice enhancement was properly applied [United States' Resp. at 1].

6

### A. Ineffective Assistance of Counsel

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." This right is the right not merely to representation but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). When a prisoner contests his sentence by raising the specter of ineffective assistance of counsel, he normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To establish deficient performance, a petitioner must show that his counsel, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. And to establish prejudice, a petitioner must demonstrate that his counsel's deficient performance was so serious that it deprived him of his fundamental right to due process. *Id.*

A court has license to address the two prongs of the bipartite test in any order, and if a petitioner fails to establish either of the prongs of this test, his claim of ineffective assistance of counsel fails. *Id.* at 697. In other words, even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Id.* at 691 (citation omitted). In short, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted); *see Thelen v. United States*, 131 F. App'x 61, 63 (6th Cir. 2005) ("A deferential standard of review applies to ineffective assistance claims. A defendant must show that counsel's representation was so 'thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" (quoting *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996))); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly

7

deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." (citation omitted)).

### 1. Failure to Object to Offense Level Calculation

Mr. Pasternak asserts that his attorney was ineffective because he failed to challenge two alleged errors in the PSR's calculation of his offense level [*See, e.g.* Br. in Supp. of Pet'r's Mot. at 4–5].

First, he claims that his attorney should have objected to the PSR's grouping of his counts [Br. in Supp. of Pet'r's Mot. at 4–5]. Specifically, he alleges that "the PSR was wrong not to group the money-laundering count with the drug counts" and the "separate scoring of the drug and money-laundering conspiracy counts" was "incorrect" [*Id.*]. In response, the United States contends that Mr. Pasternak's attorney was not ineffective because the PSR properly grouped all of Mr. Pasternak's counts pursuant to U.S.S.G. § 3D1.2(c) and the Guidelines anticipate that counts within the same group may be "scored" separately [United States' Resp. at 9–10].

Mr. Pasternak's claim fails because the PSR properly grouped his counts. The Sentencing Guidelines provide that "[a]ll counts involving the same harm shall be grouped together into a single Group." U.S.C.G. § 3D1.2. Mr. Pasternak is correct that the money laundering count was not grouped with the drug counts under § 3D1.2(d), which only applies when "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of the substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." However, the PSR correctly grouped all of Mr. Pasternak's counts under U.S.S.G. § 3D1.2(c),

which applies when "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts."[2] Moreover, the Guidelines instruct that "the highest offense level of the counts in the Group" be used in the calculation of the final offense level. U.S.S.G. § 3D1.3(a). Accordingly, the PSR's "separate scoring" of the money laundering and drug counts was appropriate. Because the PSR correctly grouped Mr. Pasternak's counts, his attorney was not deficient for failing to object on that basis. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999) "Counsel could not be unconstitutionally ineffective for failing to raise . . . meritless arguments.").

Petitioner's second argument—in which he claims that his attorney failed to identify a purported typographical error in the PSR—is also unavailing [Pet'r's Mot. at 4]. According to Mr. Pasternak, the error occurred in Paragraph 45, which reads as follows:

> **Count 14: Conspiracy to Launder Money**
>
> 45. **Base Offense Level:** The guideline for a violation of 18 U.S.C. § 1956 is USSG §2S1.1. Pursuant to §2S1.1(a)(1), 2D1.1 is referenced when determining the offense level. The base offense level is 20. USSG §§2S1.1(a)(1) and 2D1.1(a)(5).     **24**

Under Mr. Pasternak's reading, the paragraph correctly identifies the base offense level of the money-laundering conspiracy as "20," but "inexplicably carries the integer '24' out to the right-hand margin of the page." [Br. in Supp. of Pet'r's Mot. at 5]. He contends that he was prejudiced by this "typographical error" because it resulted in an adjusted offense level of "34," which Mr. Pasternak believes was "four levels higher than it should be" [*Id.*]. The United States acknowledges that the PSR could have explained the calculation of the base offense level more clearly but contends that Paragraph 45 did not contain a typographical error [United States'

---

[2] To the extent that Mr. Pasternak faults his attorney for not arguing that the money laundering count should have been included with the drug count group under § 3D1.2(d), he does not explain why he believes such an argument would have been successful. *See Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2013) ("Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" (quotation and citation omitted)).

Resp. at 11].

The Court agrees with the United States that the PSR correctly calculated Petitioner's offense level. To determine the base offense level for the money laundering count, the PSR looked to U.S.S.G. § S1.1(a)(1). That section instructs that the "base offense level" for money laundering is derived from the "offense level" of the underlying crime. U.S.S.G. § S1.1(a)(1). A general application principle explains that "[a]n instruction to use the offense level from another offense guideline refers to the offense level from the entire offense guideline (i.e., the base offense level, specific offense characteristics, cross references, and special instructions)." § 1B1.5(b)(1). Therefore, "[a]ccording to § 1B1.5(b)(1) . . . '[t]he offense level' means applying § 2D1.1 in its entirety, rather than only § 2D1.1's base offense level section." *United States v. Anderson*, 526 F.3d 319, 327 (6th Cir. 2008) (internal citation omitted). Here, the underlying crime was drug conspiracy. Under § 2D1.1, the drug conspiracy counts had a base offense level of 20 and an additional four levels for specific offense characteristics (two levels for mass-marketing through the internet and two levels for maintaining drug premises). Because specific offense characteristics are part of the "offense level" those additional four levels yielded an offense level of 24. Thus, under § S1.1(a)(1), the base offense level of the money laundering conspiracy was likewise 24.

The additional arguments that Petitioner raises in his Reply are without merit. First, he contends that the specific offense characteristics should not have been included in the drug conspiracy's offense level [Pet'r's Reply, at 2–3]. In support of this argument, he points to § 1B1.5(b)(2), which states that "An instruction to use a particular subsection or table from another offense guideline refers only to the particular subsection or table referenced, and not to the entire offense guideline" [*Id.*]. According to Mr. Pasternak, this subsection should apply here,

10

rather than § 1B1.5(b)(1) [*Id.* at 3]. This argument fails because § S1.1(a)(1) simply references the offense level of the underlying crime and does not contain an instruction to use a particular subsection or table. *See Anderson*, 526 F.3d at 327 (applying § 1B1.5(b)(1) to its reading of § S1.1(a)(1)).

Mr. Pasternak further argues that even if the money laundering "base offense level" was "24", the PSR's calculation was so unclear that his attorney should have questioned it [Pet'r's Reply at 7–8]. If his attorney had objected to Paragraph 45 and the Court had overruled the objection, Mr. Pasternak asserts that he "would have been on notice that the § 2D1.1(b) enhancements were material to calculation of the appropriate Total Offense Level for the grouped counts, and then would have argued the inappropriateness of them, especially of the mass-marketing [enhancement]" [*Id.* at 8]. Although the PSR did not explicitly explain its calculation, that calculation was nevertheless correct. Thus, Petitioner's attorney was not deficient for failing to raise an objection on that basis. *Calhoun v. United States*, No. 2:12-CR-53-RLH-MCLC-7, 2018 U.S. Dist. LEXIS 9658, at *11 (E.D. Tenn. Jan. 22, 2018) ("Counsel's performance cannot be found deficient for failing to object to a proper application of the Guidelines.").

### 2. Failure to Investigate Obstruction of Justice Enhancement

As noted above, the Court found two independent grounds for the U.S.S.G. § 3C1.1 enhancement: (1) Mr. Pasternak's destruction of the two computers that he threw in the creek and (2) the false statement he made to law enforcement, minimizing his parents' role in the offense. Mr. Pasternak argues that if his attorney had adequately investigated the relevant law and facts, the Court would not have applied the two-level enhancement for obstruction of justice [Pet'r's Mot. at 5]. In response, the United States contends that Mr. Pasternak has not identified

11

any facts or law that would have had a reasonable probability of changing the Court's decision to apply the enhancement [United States' Resp. at 12]. The Court agrees.

The Sentencing Guidelines provide for a two-level adjustment if the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation . . . of the instant offense of conviction, and . . . the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct . . . " U.S.S.G. § 3C1.1.

Here, Mr. Pasternak's destruction of the two computers clearly qualifies as obstruction of justice. Under U.S.S.G. § 3C1.1, obstructive conduct includes "destroying or concealing . . . evidence that is material to an official investigation . . . (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so." *Id.* cmt. n. 4(D). At sentencing, the Court found sufficient circumstantial evidence that when Mr. Pasternak saw agents approaching the residence, he attempted to destroy evidence by throwing the two computers in the creek. The Court also found that this evidence was material because the computers likely contained records from Mr. Pasternak's illegal steroid business similar to that extracted from the thumb drive. In his § 2255 petition, Mr. Pasternak does not point to any new evidence to undermine the Court's conclusions. Indeed, he acknowledges that he "threw two computers in a creek (or along the edge of a creek, or at least in a location that ruined the hard drives)" and that during a moment of panic, he made the "decision to hide the devices when he saw the law enforcement vehicles parked on the road near the home" [Br. in Supp. of Pet'r's Mot. at 21–22].

Although Mr. Pasternak raises several arguments regarding why he believes his attorney failed to adequately challenge the obstruction of justice enhancement, he fails to demonstrate that he suffered any prejudice from his attorney's alleged errors.

First, he claims that with additional investigation, his attorney would have shown that Mr. Pasternak "voluntarily produced all hidden devices for the searchers and that the second destroyed computer had all of its data copied on [the] thumb drive" that he turned over to law enforcement [Pet'r's Mot. at 5]. It is unclear what "investigation" Mr. Pasternak believes his attorney should have conducted. In any event, even taking his allegations as true, Mr. Pasternak still attempted to obstruct an official investigation when he disposed of the two computers in the creek. And an attempt to obstruct is sufficient to trigger a § 3C1.1 enhancement. *See United States v. Thomas*, 933 F.3d 605, 610 (6th Cir. 2019) (§ 3C1.1 does not require successful obstruction; it also covers "attempted" obstruction.). And although Mr. Pasternak turned over the cell phone and thumb drive to law enforcement, his cooperation does not foreclose application of an obstruction enhancement. As the United States points out, the Guidelines allow for extraordinary cases in which an obstruction enhancement and an acceptance of responsibility reduction apply in the same case, which is exactly what happened here [United States' Resp. at 14]. *See* USSG § 3E1.1 cmt. n. 4.

Mr. Pasternak further alleges that if his attorney had called his parents as witnesses at the sentencing hearing, they would have testified that the computer in the fire pit was burned months prior to the search for reasons unrelated to the conspiracy [Br. in Supp. of Pet'r's Mot. at 8–9, 20–21]. According to Mr. Pasternak, "placing those facts into the record would have had a material effect on the Court's perception of the obstructive conduct" [*Id.* at 20]. However, as he acknowledges, the Court did not base the obstruction enhancement on the burned computer [*Id.*].

13

Case 2:19-cv-00178-JRG-CRW   Document 10   Filed 01/04/23   Page 13 of 15   PageID #: 102

Hence, additional evidence concerning that computer would not have had any effect, much less a material effect, on the Court's decision to impose the enhancement. *See Ross v. United States*, 339 F.3d 483, 492 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694) (To establish prejudice, "Petitioner must show a reasonable probability that, but for his attorney's errors, the proceedings would have produced a different result.").

Mr. Pasternak also claims that his attorney should have made certain arguments regarding his false statement to law enforcement minimizing his parents' role in the conspiracy [Br. in Supp. of Pet'r's Mot. at 18–20]. Specifically, he alleges that his attorney should have argued that the statement did not qualify as obstruction because "the agents were not fooled" and the statement was "perhaps not even false" [*Id.* at 18–19]. However, as stated above, the two destroyed computers formed a complete independent basis for the two-level enhancement. Thus, even if Mr. Pasternak's attorney were deficient for failing to address this alternative basis for the enhancement, he has not established prejudice. *See Strickland*, 266 U.S. at 691 (even if a particular aspect of counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment.).

### B. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability, which is necessary for Mr. Pasternak to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claims on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack*

14

*v. McDaniel*, 529 U.S. 473, 484 (2000). Having addressed the merits of Mr. Pasternak's claims, the Court does not conclude that reasonable jurists would find that its rejection of his claims is debatable or wrong. The Court will therefore decline to issue a certificate of appealability.

IV. **CONCLUSION**

Because Mr. Pasternak fails to satisfy his burden of establishing that his conviction and sentence were in violation of the Constitution, or that a fundamental defect resulted in a complete miscarriage of justice or an egregious error, his Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Doc. 1] will be **DENIED**, and this case will be **DISMISSED with prejudice**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
